## APPENDIX: ADDITIONAL FACT PLEADSINGS IN SUPPORT OF MONELL CLAIMS

### "CONTEMPT OF COP" AND "COVER CHARGE" ARRESTS

1. Upon information and belief, police officers in the City of New York and other municipalities nationwide frequently make arrests in the absence of the commission of any crime by the person arrested, motivated by a desire to punish the arrestee for the arrestee's putative failure to display the degree of deference or subservience demanded by the arresting officers. Such arrests are frequently referred to as "contempt of cop" arrests.

2. Upon information and belief, police officers in the City of New York and other municipalities nationwide make "contempt of cop" arrests in the absence of a crime, they frequently justify the arrest by falsely reporting that the arrestee has committed a crime. Such charges are frequently referred to as "cover charges."

3. Upon information and belief, when police officers in the City of New York and other municipalities nationwide frequently charge crimes such as disorderly conduct, resisting arrest, and obstruction of governmental administration as cover charges.

4. On February 28, 2008, the Seattle Post-Intelligencer published an investigative review of six (6) years of Seattle Municipal Court files, wherein the Post-Intelligencer's investigators found that African-Americans in that predominantly Caucasian city were arrested solely on charges of "obstructing a public officer" and related crimes such as resisting arrest eight (8) times as often as Caucasians.[3]

5. The Seattle Post-Intelligencer's investigative review cited above also found that the Seattle City Attorney's Office dropped nearly half of all Seattle criminal cases predicated solely on charges of "obstructing a public officer" and related crimes such as resisting arrest between January 2002 and 2008. See fn3.

6. In response to Seattle Police officers' questionable arrest activities discussed above, "Leo Poort, the [Seattle Police] department's legal adviser, included warnings about obstruction arrests in... her top 12 tips to officers for 'avoiding civil liability lawsuits.' 'Don't arrest for 'contempt' of cop,' she wrote in tip No. 3. 'Officers must be thick skinned and not unduly

---

[3] Nalder, Kamb and Lathrop, "Blacks Are Arrested on 'Contempt of Cop' Charge at Higher Rate," Seattle Post-Intelligencer, February 28, 2008. Article incorporated herein by reference and available online at http://www.seattlepi.com/local/353020_obstructmain28.asp

influenced by the attitudes of persons they contact. Flunking the 'attitude' test (is) not a bookable offense.'" See fn3.

7. In a review of San Jose criminal cases published on October 31, 2009, the San Jose Mercury News reported that the Santa Clara County Prosecutor declined to prosecute over one-third (33.33…%) of resisting arrest cases brought by San Jose police, a rate that is markedly disproportionate to the Santa Clara County Prosecutor's general twenty percent (20%) decline-to-prosecute rate.[4]

8. The San Jose Mercury News investigation cited above also found that the San Jose Police Department did not sustain or substantiate civilian complaints with respect to any of the ninety-nine (99) use-of-force cases that it reviewed in 2008, even though the San Jose Independent Police Auditor disagreed with police findings in twenty-five (25) of those 99 cases. See fn4.

9. In response to the San Jose Mercury News investigation cited above, the San Jose Police Department instituted a new policy of tracking arrests where it appears that resisting arrest is being used as a cover charge to justify unnecessary and excessive police uses of force on civilians. See fn4.

10. A November 19, 1997 New York Times special report on police brutality predicated on perceived or actual disrespect of New York City Police Officers noted that at that time, Defendant City of New York did not monitor or track police use or levying of charges such as disorderly conduct or resisting arrest.[5]

11. November 19, 1997 New York Times special report on police brutality predicated on perceived or actual disrespect of New York City Police Officers noted that at that time, Defendant City of New York did not monitor or track police use or levying of charges such as disorderly conduct or resisting arrest, despite considerable anecdotal evidence that New York City Police Officers were arresting individuals on those and other like charges to justify use of force and/or to punish those individuals for "contempt of cop." See fn5.

12. The above-cited New York Times special report noted that Los Angeles had already instituted a system for tracking the initiation and dispositions of "contempt of cop" and "cover charge" charges such as resisting arrest and disorderly conduct as of the time of that article's publication in 1997. See fn5.

13. Upon information and belief, the policies, customs and practices of Defendant CITY OF NEW YORK, and the New York City Police Department have not changed significantly since the time of that article's publication in 1997.

---

[4] Webby, Sean, "Mercury News investigation: San Jose police often use force in resisting-arrest cases," San Jose Mercury News, October 31, 2009. Article incorporated by reference herein and available online at http://www.mercurynews.com/top-stories/ci_13686438?nclick_check=1

[5] Sontag, Deborah, and Barry, Dan, "CHALLENGE TO AUTHORITY: A special report.; Disrespect as Catalyst for Brutality," New York Times, November 19, 1997. Article incorporated by reference herein and available online at http://query.nytimes.com/gst/fullpage.html?res=9807E7D9163BF93AA25752C1A961958260&scp=8&sq=contempt+of+cop&st=cse&pagewanted=all

14. For example, in July 2008, police stopped and arrested Michael Cephus in the Lower East Side area of Manhattan. As reported in the New York Post July 30, 2008, after two officers placed Mr. Cephus on the ground, one of the officers began "whaling away" at Mr. Cephus with his nightstick. Two bystanders captured the beating on video. The two men who filmed the beating were arrested and charged with disorderly conduct.[6]

15. As reported in the New York Daily News on June 16, 2010, Queens councilman Dan Halloran was given a ticket for blocking a crosswalk when he stopped to take pictures of a New York City Police Department vehicle that Mr. Halloran had observed driving recklessly and violating traffic laws on its way to a Dunkin' Donuts.[7]

16. As reported by NBC New York television news on July 22, 2010, two officers who were videotaped beating a defenseless arrestee, Walter Harvin, arrested Mr. Harvin and charged him with resisting arrest and disorderly conduct in order to justify their attack upon Mr. Harvin. One of the officers involved was criminally charged as a result.[8]

17. As reported by a Brooklyn City Councilman in July, 2007, two bystanders observing a young man who was handcuffed and immobilized being beaten by police officers, were themselves beaten and arrested when they asked the officers to stop beating the defenseless arrestee. One of the bystanders was charged with obstruction of justice, resisting arrest and disorderly conduct.[9]

18. A recent article by *Reuters News* sheds light on this unnecessary escalation and creation of more substantial charges in its review and NYPD stops. Reuters' analysis showed, particularly in its evaluation of the NYPD'S policing of the Brownsville region of Brooklyn, that the undertaking of contempt of cop arrests often create situations in which individuals who have been stopped by New York City Police Officers for pre-textual or otherwise dubious alleged violations may find themselves facing yet more substantial charges due to the oft-times confrontational nature of police-civilian encounters that may cause the tempers of all parties and participants involved to unnecessarily escalate.[10]

19. Reuters noted particularly the statement of "Anthony Mitchell, who runs an outreach program for young blacks called "Man Up!", [who] says that too often a stop-and-frisk can turn into multiple charges. *Challenging a trespassing or loitering charge can lead to a disorderly*

---

[6] Alpert, Lukas I., and Weiss, Murray, "2nd Video Gives NYPD Black Eye." New York Post, July 29, 2008. Article incorporated by reference herein and available online at http://www.nypost.com/p/news/regional/item_EZ7SbCpNNtsxar3MnXJ5JM

[7] Trapasso, Clare, "Queens councilman Dan Halloran irate over light-running, yakking traffic cop Daniel Chu," New York Daily News, June 16, 2010. Article incorporated by reference herein and available online at http://www.nydailynews.com/ny_local/queens/2010/06/16/2010-06-16_queens_councilman_dan_halloran_irate_over_lightrunning_yakking_traffic_cop_danie.html#ixzz0r1xDq82S.

[8] Scharr, Jillian, "Video Released in Police Brutality Case," NBC New York, June 22, 2010. incorporated by reference herein and available online at a http://www.nbcnewyork.com/news/local/Video-Released-in-Police-Brutality-Case-96882129.html

[9] Shabazz, Saeed "Activist lawyers beaten by Brooklyn police," FinalCall.com News, July 12, 2007. Article incorporated by reference herein and available online at http://www.finalcall.com/artman/publish/article_3711.shtml.

[10] Francescani, Chris, et al. "Insight: Under Siege: 'Stop and Frisk Polarizes New York'" Reuters, July 3, 2012. Article incorporated by reference herein and available online at http://www.reuters.com/article/2012/07/03/us-usa-newyork-stopandfrisk-idUSBRE86205O20120703

*conduct charge, and then just a few more wrong moves can can add a charge of resisting arrest or even assaulting an officer, a felony. 'These things can spin out of control easily,' Mitchell said.* See fn10 (Emphasis Added).

20. Upon information and belief, Defendant CITY OF NEW YORK and the New York Police Department continue to resist calls for disclosure statistics concerning minor crimes such as the typical "cover charge" crimes.[11]

21. Upon information and belief, the "contempt of cop" and "cover charge" charges levied most regularly by New York City Police Officers are disorderly conduct, resisting arrest, and obstruction of governmental administration.

22. Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interactions.

23. Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts.

24. Upon information and belief, Defendant CITY OF NEW YORK has been, and continues to be, aware of the prevalence of the problem of officers of the New York City Police Department making baseless "contempt of cop" arrests, and bringing false "cover charges" against the arrestees, but has failed to take action to remedy the problem.

25. Upon information and belief, to date Defendant City of New York has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

26. Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, to date Defendant City of New York has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

27. Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing custom or practice of charging individuals with crimes and

---

[11] Rivera, Ray and Baker, Al, "Data Elusive on Low-Level Crime in New York City," The New York Times, Nov. 1, 2010. Article incorporated by reference herein and available online at http://www.nytimes.com/2010/11/02/nyregion/02secrecy.html?scp=1&sq=Data%20Elusive%20on%20Low-Level%20Crime%20in%20New%20York%20City&st=cse.

violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration as pretexts to justify punitive false arrests undertaken in the absence of probable cause, to date Defendant City of New York has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

28. Upon information and belief, and despite due and repeated notice that New York City Police Officers such as the Defendant "John Doe" POLICE OFFICERS, and Defendant "John Doe" SENIOR POLICE OFFICER have charged and continue to charge individuals with crimes and violations such as resisting arrest, disorderly conduct, obstruction of governmental administration, or fabricating a crime or violation as pretexts to justify punitive false arrests undertaken in the absence of probable cause, to date Defendant City of New York has not implemented any particular oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

29. The particular arrests of Plaintiff RONALD LASHLEY and Plaintiff ANGEL AGOSTO are believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, obstruction of governmental administration, or fabricating a violation or crime for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because the Plaintiffs' arrests was undertaken in the absence of probable cause to arrest.

30. The particular arrests of the Plaintiff RONALD LASHLEY and Plaintiff ANGEL AGOSTO were believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, obstruction of governmental administration, or fabricating a violation or crime for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because Plaintiffs' arrest was undertaken in a manner which indicated that the individual Defendant Officers who participated in Plaintiffs' arrests made the determination to arrest Plaintiffs despite compelling evidence indicating thats Plaintiff should not be arrested.

## UNCONSTITUTIONAL ARREST QUOTAS ILLEGALLY IMPLEMENTED BY THE NEW YORK CITY POLICE DEPARTMENT

31. Upon information and belief, police officers in the New York City Police Department, including the Defendant "John Doe" POLICE OFFICERS, and Defendant "John Doe" SENIOR POLICE OFFICER are required, trained, or encouraged to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department.

32. Said quantitative enforcement "productivity goals" can also be referred to as arrest quotas.

33The need to meet arrest quotas can induce police officers to make arrests in the absence of probable cause.

34. Upon information and belief, the arrest quotas promulgated by Defendant CITY OF NEW YORK induce New York City police officers, such as the Defendant "John Doe" POLICE OFFICERS and Defendant "John Doe" SENIOR POLICE OFFICER herein, to make arrests in the absence of probable cause, in violation of the constitutional rights of individuals to be free from unreasonable seizures.

35. The existence of the aforesaid unconstitutional arrest quota custom and/or policy was confirmed as a finding of fact when, on February 18, 2011, the jury in <u>Bryant v. City of New York</u>, Kings County Supreme Court Docket #022011/2007, found that the plaintiff in that case's arrest had resulted from a policy "regarding the number of arrests officers were to make that violated plaintiff's constitutional rights and contributed to her arrest" imposed by Defendant City of New York.

36. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may additionally be inferred from repeated occurrences of similar wrongful conduct, as documented in lawsuits including but not limited to the following civil rights actions filed against the City of New York:

> **Alvin Williams v. The City of New York et al.**, United States District Court, Southern District of New York, 05 CV 4013.
>
> **Corey Williams v. The City of New York et al.**, United States District Court, Eastern District of New York, 07 CV 5362.

37. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on November 8, 2010, that commanders are permitted to set "productivity goals."[12]

38. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn. See fn10.

39. Attached hereto as **Exhibit "C"** are copies of the quantitative target sheets obtained from the 77th Precinct by or on behalf of the New York Daily News, as referenced in the aforesaid November 8, 2010 New York Daily News article.

40. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the full page color advertisement placed by the Patrolmen's Benevolent Association of the City of New York in the May 7, 2012 edition of the New York Daily News, which states, "Don't Blame the Cop[,] Blame NYPD Management For the pressure to write summonses and the pressure to convict motorists[.] Because of ticket quotas, New York City police officers are being pressured to write summonses to as many motorists as possible . . ." A reproduction of the advertisement in question is attached hereto as **Exhibit "D"**.

---

[12] Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://www.nydailynews.com/ny_local/2010/11/08/2010-11-08_cops_told_to_meet_quotas.html.

41. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tapes recordings acquired by WABC-TV/DT, including, among other admissions, a 41st precinct sergeant explaining that each of his officers is held to a twenty summons per month and one arrest per month enforcement quota, as reported by the media on March 3, 2010.[13]

42. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make "special" arrests as directed by their superiors even if they must void the arrests at the end of their shifts, as reported by the media on May 11, 2010.[14]

43. The particular arrests of Plaintiff RONALD LASHLEY and Plaintiff ANGEL AGOSTO are believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy, in that Defendants responding to the incident giving rise to this action arrested Plaintiffs, despite: (i) having not personally viewed any criminal conduct; (ii) having no victim or witness claiming Plaintiff RONALD LASHLEY or Plaintiff ANGEL AGOSTO committed any crime and (iii) having compelling evidence that no probable cause existed to arrest either Plaintiff RONALD LASHLEY or Plaintiff ANGEL AGOSTO.

---

[13] Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010. Article incorporated by reference herein and available online at http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

[14] Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town." Village Voice, May 11, 2010. Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

DATED: New York, New York
July 6th, 2012

Respectfully submitted,

SAMUEL B. COHEN [SC 0622]
STECKLOW COHEN & THOMPSON
10 SPRING STREET – SUITE 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
SAM@WYLIELAW.COM
ATTORNEYS FOR PLAINTIFF