```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MILAGROS MICHELLE KELLY, on behalf      :
of her minor son RONALD LASHLEY, and
URBANA SANCHEZ, on behalf of her minor  :
son ANGEL AGOSTO,

                    Plaintiffs,         :

      -against                          :   REPORT AND RECOMMENDATION

THE CITY OF NEW YORK, a municipal entity, :   12 Civ. 5272 (WHP)(KNF)
NEW YORK CITY POLICE OFFICERS "JOHN
DOES1–3", "JOHN DOE" POLICE DETECTIVE,  :
NEW YORK CITY POLICE LIEUTENANT
SACCONE, and NEW YORK CITY POLICE       :
OFFICER JACOBERGER,
                                        :
                    Defendants.
                                        :
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE WILLIAM H. PAULEY, III, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

This action was brought pursuant to 42 U.S.C. §§ 1983 and 1988 by Milagros Michelle Kelly ("Kelly"), on behalf of her minor son Ronald Lashley ("Lashley"), and Urbana Sanchez ("Sanchez"), on behalf of her minor son Angel Agosto ("Agosto"), against the City of New York, New York City Police Lieutenant Saccone ("Saccone"), New York City Police Officer Jacoberger ("Jacoberger") and three unnamed New York City police officers ("John Doe Police Officers 1–3"). Before the Court is an application by the plaintiffs for an order approving the settlement of this action, pursuant to Local Civil Rule 83.2 of this court and New York Civil Practice Law and Rules ("CPLR") §§ 1201–1211.

# BACKGROUND

On September 22, 2011, at approximately 9:00 p.m., Lashley and Agosto (hereinafter, collectively, "plaintiffs"), who were both fifteen-years-old at the time, were walking along Westchester Avenue, in Bronx County. They were approached by Saccone, who inquired from where the plaintiffs were coming. Before they had an opportunity to respond, Saccone searched Agosto's pockets. After a search of each plaintiff, a police officer handcuffed Lashley and Agosto, and they were driven to the New York Police Department's 43rd Precinct. The plaintiffs were told they were being transported to the police station house because of a fight that had occurred.

Upon arriving at the station house, the plaintiffs were placed inside the building and handcuffed to a bench, for approximately four hours. The plaintiffs asked officers in the station house whether they could call their parents; they were not allowed to do so. Eventually, Agosto was sent to a detective's office, where he was questioned about a stolen cellular telephone. Agosto denied knowing about the stolen cellular telephone, yet the detective threatened to send him to a juvenile detention center and called him a "dumb ass." The detective then questioned Lashley, during which time he accused Lashley of lying, cautioned him "not [to] play dumb," and stated that Agosto had told him everything the "two have done since leaving [Agosto's] house." Neither plaintiff was afforded the opportunity to be questioned with his parent or counsel present.

Agosto's mother, Sanchez, was not informed of her son's arrest until 11:30 p.m., on September 22, 2011, and Agosto was not released from police custody until 8:30 a.m. the following morning. Lashley's mother, Kelly, was informed of her son's arrest at 1:30 a.m. on September 23, 2011, and Lashley was not released from police custody until 4:30 p.m. on that

day. The plaintiffs were issued desk appearance tickets, requiring them to appear in court. Several days after making their court appearance, the plaintiffs were notified that the charges against them would not be prosecuted. Thereafter, the instant action was commenced.

The plaintiffs—through their attorney, Samuel Cohen ("Cohen")—have negotiated with the defendants and resolved this matter; as a result, each plaintiff will receive $20,000. On January 28, 2013, the plaintiffs submitted affidavits from their respective parent guardians and Cohen, and an "Order." Each guardian's affidavit identifies: (a) the guardian's relationship to the relevant infant plaintiff; (b) the residence and birth date of the pertinent infant; (c) the nature of the respective infant's claims, and that only compensatory damages for constitutional rights violations are sought via this action; and (d) the contingency fee under the retainer agreement with counsel. Each affidavit also explains that the respective parent believes the contingency fee arrangement is fair and reasonable. Each guardian's affidavit contains assurances that no other action has been commenced on behalf of the relevant infant plaintiff, based on the events that occasioned the commencement of this action. Cohen's affidavit sets forth: (i) the nature of the claims; (ii) the activities counsel performed in connection with this action[1]; (iii) the expenses incurred in prosecuting the action[2]; and (iv) counsel's contingency fee, 33 1/3% of the amount recovered by the plaintiffs. Cohen asserts, through his affidavit, that the settlement is fair and reasonable.

---

[1] The affidavit indicates the following with respect to the activities counsel performed: Cohen consulted with his clients; investigated the case; drafted and filed Notices of Claims; obtained photographs of the incident location; prepared his clients for hearings; reviewed hearing transcripts; drafted and filed pleadings; prepared and made initial disclosures; negotiated a settlement with his adversary; arranged for court-mandated mediation; prepared infant compromise documents; and researched financial institutions and accounts into which settlement proceeds might be placed.

[2] Cohen maintains that the following expenses were incurred: $350.00, the filing fee; $8.45 for photostatic copying; $90.00 for "Services"; $20.20 for FedEx Ground courier services; and $133.50 for the infant compromise hearing transcript.

On May 2, 2013, an infant compromise hearing was held. The plaintiffs and their respective parent guardians testified. Each explained his or her reasons for agreeing to the proposed settlement. Each guardian stated that the proposed settlement is in the best interest of her child and that the monetary component of the settlement agreement is adequate. Cohen, during a colloquy with the Court, discussed the risks his clients would face if the case proceeded to trial, including the possibility of a judgment for the defendants; he also noted that pretrial discovery could provide a basis for an assertion of qualified immunity by one or more of the defendants. In addition, Cohen noted that, inasmuch as Kelly and Lashley were relocating to South Carolina—and did not have the resources to travel between New York and South Carolina repeatedly—their absence from New York would make it difficult for him to litigate this action. The Court also asked Cohen, during the colloquy, to explain the reference, in the pre-conference submissions, to the establishment of a supplemental needs trust for one of the infant plaintiffs. Cohen replied that the reference to such a trust was an error.

On May 14, 2013, the plaintiffs made additional submissions, including supplemental affidavits from the parents that disclosed how the settlement funds would be disbursed, and a proposed "Order" setting forth the settlement's terms. These submissions also included another affidavit from Cohen, through which he explains, <u>inter alia</u>, that, in reaching this settlement, he has not: (1) associated with the defendants in business or otherwise; or (2) received any compensation from them or their representatives.

Subsequent to these submissions, the plaintiffs submitted a "Stipulation and Order of Dismissal," to the Court, which was signed by the parties on November 27, 2012; it recites the total amount of the proposed settlement. Included with this document were general releases executed by Kelly and Sanchez on behalf of their respective sons. On September 11, 2013, the

Court directed the plaintiffs to provide it with a "final proposed settlement agreement, as agreed upon by the parties subsequent to the May 2, 2013 infant compromise hearing." In response, the plaintiffs submitted another "Stipulation of Settlement and Order of Dismissal," which was signed by the parties on September 12, 2013; Paragraph 4 of that document describes how the settlement funds will be disbursed:

> (A) the sum of $13,132.62 to Urbana Sanchez, parent and natural guardian of infant Plaintiff Angel Agosto, <u>jointly with</u> an officer of an FDIC-insured bank doing business in the state of New York, to wit, **Popular Community Bank**, with said funds to be deposited in said Bank and held therein in an **interest bearing savings account** for the sole use and benefit of said infant,
>
> (B) the sum of $13,132.62 to Milagros Michelle Kelly, parent and natural guardian of infant Plaintiff Ronald Lashley, <u>jointly with</u> an officer of an FDIC-insured bank doing business in the state of New York, to wit, **Bank of America**, with said funds to be deposited in said Bank in an **interest bearing savings account** and held therein for the sole use and benefit of said infant,
>
> (C) the sum of $13,734.77 to the order of the above named attorneys for the plaintiffs as and for attorneys' fees, inclusive of all disbursements and expenditures made on plaintiffs' behalf, subject to further order of this Court . . . .

Paragraph 5 of the "Stipulation of Settlement and Order of Dismissal" provides that:

> Each Plaintiff shall execute and deliver to Defendants' attorney all documents necessary to effect this settlement, including, without limitation, a General Release based on the terms of paragraph "2" above and an Affidavit of Status of Liens. If Medicare has provided payment and/or benefits for any injury or condition that is the subject of this lawsuit, prior to tendering the requisite documents to effect this settlement, Plaintiffs shall have notified Medicare and shall submit with the settlement documents a Medicare final demand letter for conditional payments. A Medicare Set-Aside Trust may also be required if future anticipated medical costs are found to be necessary pursuant to 42 U.S.C. § 1395y(b) and 42 C.F.R §§ 411.22 through 411.26.

Paragraph 9 of the "Stipulation of Settlement and Order of Dismissal" states the following:

> Plaintiffs agree to hold harmless Defendants the City of New York, Lieutenant Michael Saccone, Police Officer James Jacoberger, and the individuals named

>herein as "New York City Police Officers John Does 1-3" regarding any liens or past and/or future Medicare payments, presently known or unknown in connection with this matter. If conditional and/or future anticipated Medicare payments have not been satisfied, defendants reserve the right to issue a multiparty settlement check, naming Medicare as a payee or to issue a check to Medicare directly based upon Medicare's final demand letter.

## DISCUSSION

### Legal Standard

*Proposed Settlement Agreement*

> An action by or on behalf of an infant . . . shall not be settled or compromised, or voluntarily discontinued, dismissed or terminated, without leave of the Court embodied in an order, judgment or decree. The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the Court, for cause shown, may dispense with any New York State requirement . . . . The Court shall order the balance of the proceeds of the recovery or settlement to be distributed as it deems may best protect the interest of the infant . . . .

Local Civil Rule 83.2(a)(1), (3).

Judicial approval of an infant's claim is required to "safeguard the rights and interests of infants by empowering the courts to scrutinize the facts regarding the propriety and reasonableness of the proposed settlement." Valdimer v. Mount Vernon Hebrew Camps, Inc., 9 N.Y.2d 21, 24, 210 N.Y.S.2d 520, 522 (1961). A court's role in reviewing a proposed compromise of an infant's claim is to ensure that the settlement is "fair and reasonable and in the infant plaintiff's best interests." Edionwe v. Hussain, 7 A.D.3d 751, 753, 777 N.Y.S.2d 520, 522 (App. Div. 2nd Dep't 2004); see Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 654 (2d Cir. 1999) (a court must determine whether a proposed settlement that involves an infant's claim is "fair, reasonable and adequate, by comparing the terms of the compromise with the likely rewards of litigation").

Courts weigh various factors in determining whether to approve a settlement; for example, in the context of class-action settlements, courts consider whether:

> (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently . . . . The adequacy of any settlement can only be determined by holding it up against "the strength of the Plaintiffs' case."

Ross v. A.H. Robins Co., 700 F. Supp. 682, 683–84 (S.D.N.Y. 1988) (citation omitted).

Under New York law, "[u]pon motion of a . . . guardian ad litem of an infant or, if there is no such guardian, then a parent having legal custody of an infant, . . . the court may order settlement of any action commenced by or on behalf of the infant . . . . An order on such a motion shall have the effect of a judgment." CPLR § 1207. A motion to settle an infant's claim must be accompanied by an affidavit of the infant's representative and, if that person has counsel, an affidavit by the attorney. See CPLR § 1208. The affidavit of the infant's representative must state:

> 1. his name, residence and relationship to the infant . . . ;
>
> 2. the name, age and residence of the infant . . . ;
>
> 3. the circumstances giving rise to the action or claim;
>
> 4. the nature and extent of the damages sustained by the infant . . . ;
>
> 5. the terms and proposed distribution of the settlement and his approval of both;
>
> 6. the facts surrounding any other motion or petition for settlement of the same claim, of an action to recover on the same claim or of the same action;
>
> 7. whether reimbursement for medical or other expenses has been received from any source; and

> 8. whether the infant's . . . representative or any member of the infant's . . . family has made a claim for damages alleged to have been suffered as a result of the same occurrence giving rise to the infant's . . . claim and, if so, the amount paid or to be paid in settlement of such claim or if such claim has not been settled the reasons therefor.

CPLR § 1208(a)(1–8).

The affidavit of counsel to the infant's representative must state:

> 1. his reasons for recommending the settlement;
>
> 2. that directly or indirectly he has neither become concerned in the settlement at the instance of a party or person opposing, or with interests adverse to, the infant . . . nor received nor will receive any compensation from such party, and whether or not he has represented or now represents any other person asserting a claim arising from the same occurrence; and
>
> 3. the services rendered by him.

CPLR § 1208(b)(1–3).

*Attorney's Fees*

The relevant Local Civil Rule of this court provides that "[t]he court shall authorize payment to counsel for the infant . . . of a reasonable attorney's fee and proper disbursements from the amount recovered in such an action . . . and shall determine the said fee and disbursements, after due inquiry as to all charges against the fund." Local Civil Rule 83.2(a)(2). New York's Judiciary Law provides that, in infant compromise cases, where a contract for legal services exists between an attorney and an infant's guardian, the attorney may be compensated for the legal services provided only after the attorney makes application to the court setting "forth briefly the contract, the services performed by the attorney and pray that there be awarded to him a suitable amount out of the . . . compromise or settlement obtained through his efforts as attorney on behalf of the infant." New York Judiciary Law § 474. After analyzing the attorney's application, the court must "determine the value of the services of said attorney, . . .

and . . . thereupon make an order determining the suitable compensation for the attorney . . . ." Id.

In rendering a determination about what suitable compensation for an attorney is, in the circumstance of an action brought on behalf of an infant, a "court must determine the reasonable value of the legal services provided in light of all of the facts and circumstances, with consideration given to any agreement as to compensation, and award an amount consistent with such a determination and with the court's duty to ensure fair and adequate compensation for the infant." White v DaimlerChrysler Corp., 57 A.D.3d 531, 534, 871 N.Y.S.2d 170, 174 (App. Div. 2d Dep't 2008). Even in a situation where the infant's representative has reached an agreement with counsel concerning attorney's fees, "the amount of the fee must be fixed by the court and any agreement of the guardian is advisory only." Werner v. Levine, 52 Misc.2d 653, 654–55, 276 N.Y.S.2d 269, 271 (Sup. Ct. Nassau Cty. 1967).

> In general, factors to be considered [, with respect to determining a reasonable attorney's fee,] include (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved.

Diaz v. Audi of Am., Inc., 57 A.D.3d 828, 830, 873 N.Y.S.2d 308, 311 (2008) (citing Matter of Freeman, 34 N.Y.2d 1, 9, 355 N.Y.S.2d 336, 341 (1974)).

## Application of Legal Standard

*Proposed Settlement Agreement*

In the original parent affidavits, both Kelly and Sanchez fulfilled a majority of CPLR § 1208's requirements. However, neither affidavit mentioned the proposed distribution of the settlement funds, nor contained each parent's approval of the distribution, as required by CPLR

§ 1208(a)(5).  The May 2, 2013 infant compromise hearing record was left open for fourteen (14) days to allow for these deficiencies to be corrected, which was accomplished via the supplemental parent affidavits submitted to the Court on May 14, 2013.

Cohen maintains, in his affidavit, that the proposed settlement amount is fair and reasonable, given that a higher amount would not likely be awarded to the plaintiffs if the action proceeded to trial.  Cohen's affidavit lists the services he performed, and states that he has no interests in the results of the settlement that would otherwise be adverse to his clients' interests, thus fulfilling the requirements of CPLR § 1208(b)(1–3).

Based on the record before it, the Court finds that the proposed settlement is fair, reasonable, and in the best interests of the infant plaintiffs, given the nature of the civil rights violations alleged by the plaintiffs and the risks anticipated and articulated by Cohen.

However, not all the settlement terms in the September 12, 2013 "Stipulation of Settlement and Order of Dismissal" warrant approval by the court.  The following language in Paragraphs 4(A) & (B): "jointly with an officer of an FDIC-insured bank doing business in the state of New York," should be stricken.  The court cannot direct an unidentified individual to be bound by an agreement to which he or she is not a party.  Paragraph 5, except its first sentence, should be stricken.  This language discusses Medicare payments for physical injuries, but, based on the affidavits supplied by the infants' parent representatives and their counsel, the infant plaintiffs incurred no physical or other injuries as a result of their encounter with the defendants.  Paragraph 9 should be stricken because it is superfluous (the general releases already absolve defendants of liability), and it discusses Medicare payments in a case where no physical or other injuries are alleged.  Moreover, Paragraph 9 discusses known or unknown past and future liens; liens should have been discovered prior to negotiating the disposition of the action and addressed

in the plaintiffs' submissions, but were not.

***Attorney's Fees***

The Court finds that Cohen is not entitled to the requested attorney's fees, which amount to one-third of the settlement funds. The proposed settlement amount appears to be a satisfactory result for the plaintiffs, given the nature of their claims. However, the one-third contingency fee overcompensates Cohen for the services he rendered. This is so because Cohen: (i) failed repeatedly to provide a proposed settlement agreement to the Court; and (ii) wasted his and the Court's time, and ill-served his clients by researching issues that were not relevant to this action, such as the need for a supplemental needs trust. Compensating counsel for taxing judicial resources, unnecessarily, and for performing needless work is not warranted.

Analyzing the reasonableness of Cohen's fee, based on the factors set forth in <u>Diaz</u>, and whether it should be adjusted, the Court finds that—with respect to the first factor, the time and labor required—this is a simple, straightforward § 1983 action, not a complex commercial litigation requiring either the expenditure of many hours or labor-intensive work. Therefore, this factor weighs in favor of reducing counsel's fee. The second factor, the ability and experience of the attorney, warrants a reduction of the fee sought by Cohen because he appeared not to have had prior experience with cases involving compromising an infant's claims and the procedures pertinent to such matters. For example, Cohen supplied affidavits, initially, that were deficient, requiring the submission of supplemental affidavits. In addition, Cohen failed repeatedly to submit to the Court an adequate proposed settlement agreement. Furthermore, the only pretrial discovery engaged in by Cohen appears to have been limited to obtaining photographs of the incident location. Thus, the <u>Diaz</u> factors pertinent to counsel's skill and responsibility also militate in favor of reducing the fee sought.

Cohen hampered the Court's ability to assess the appropriateness of the settlement order timely, by, <u>inter alia</u>, failing repeatedly to submit documents needed by the Court to perform its analysis.  For example, instead of submitting a proposed settlement agreement to the Court, Cohen submitted multiple documents that were either styled "Order" or "Stipulation of Settlement and Order of Dismissal"—each of which contained proposed settlement terms that differed from those in its predecessor.  Even after being directed by the Court to submit a proposed settlement agreement—and being advised that a "proposed order is not the same as a proposed settlement agreement"—Cohen submitted a "Stipulation of Settlement and Order of Dismissal" to the Court.

The plaintiffs are infants and, thus, are wards of the court.  <u>See</u> <u>White</u>, 57 A.D.3d at 534, 871 N.Y.S.2d at 173.  As such, the Court must endeavor always to ensure that their interests are protected.  In the case at bar, the Court finds that it is not in the infants' best interests to award their attorney the full amount referenced in the retainer agreement where the level of legal services provided, as discussed above, does not justify it.  Accordingly, the Court finds that a 10% reduction of the $13,132.62 in attorney's fees requested by Cohen is warranted.  Thus, an award of $11,819.35 to Cohen, for the legal services he rendered to the plaintiffs, is reasonable and appropriate.  The Court also finds that the costs requested cannot be awarded in total, as the $90.00 for "Services" is not adequately explained, leaving the Court unclear about the purpose of this expenditure.  Therefore, an award of $512.15 for costs incurred in connection with this action, is warranted.  Altogether, Cohen's reasonable fees and costs are $12,331.50.

## RECOMMENDATION

Based on the above, I recommend that your Honor approve the parties' agreement to settle and compromise the infants' claims for a total amount of Forty Thousand dollars exactly

($40,000) to be paid by the defendants to the plaintiffs, resulting in an equal settlement payment to each plaintiff of Twenty Thousand dollars exactly ($20,000.00). I recommend further that the total amount be disbursed as follows:

>i) the sum of Twelve Thousand Three Hundred Thirty–One dollars and Fifty cents exactly ($12,331.50), to Stecklow Cohen & Thompson as compensation for the legal services rendered to the plaintiffs, inclusive of all reasonable disbursements and expenditures made on plaintiffs' behalf;
>
>ii) the sum of Thirteen Thousand Eight Hundred Thirty-Four dollars and Twenty-Five cents ($13,834.25) to Sanchez, with said funds to be deposited in an interest bearing savings account at Popular Community Bank and held there for the sole use and benefit of Agosto; and
>
>iii) the sum of Thirteen Thousand Eight Hundred Thirty-Four dollars and Twenty-Five cents ($13,834.25) to Kelly, with said funds to be deposited in an interest bearing savings account at Bank of America and held there for the sole use and benefit of Lashley.

In addition, I recommend that the terms and conditions of the proposed settlement, as set forth in the September 12, 2013 "Stipulation of Settlement and Order of Dismissal," be adopted. However, I recommend that the following portions of the "Stipulation of Settlement and Order of Dismissal" be excised: (a) so much of Paragraphs 4(A) & (B) as contains the language "jointly with an officer of an FDIC-insured bank doing business in the state of New York," (b) Paragraph 5, except its first sentence, and (c) Paragraph 9.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

13

objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, III, 500 Pearl Street, Room 2210, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Pauley. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985); IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58–59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Dated: New York, New York  
      October 9, 2013

Respectfully submitted,

/s/ Kevin Nathaniel Fox  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE